LAKE SHORE & MICHIGAN SOUTHERN RAILWAY CO.

v.

WILLIAM KUHLMAN, Adm'r, etc.

PRACTICE—VERDICT RESULT OF PREJUDICE OR PASSION.—Courts are reluctant to disturb the findings of juries upon mere questions of fact, but where the verdict is so manifestly contrary to the evidence as to show that it must have been the result of passion, prejudice, or undue sympathy, it is the duty of courts to reverse such judgment.

Appeal from the Superior Court of Cook county ; the Hon. Elliott Anthony, Judge, presiding.    Opinion filed January 20, 1886.

Mr. Cyrus D. Roys and Mr. Pliny B. Smith, for appellant.

Mr. Clarence F. Dore, for appellee.

Wilson, J.    This was an action on the case brought by the administrator of Adolph Harbaum against appellant, to recover damages for the death of Harbaum, who was run over and killed by appellant's cars while attempting to cross the company's tracks at Polk street, in the city of Chicago.    There was a jury trial resulting in a verdict against appellant for $1,425, for which sum appellee had judgment.    Appellant's motion for a new trial being overruled, it appealed to this court.

The facts are within very narrow limits, and as to those upon which the case turns there is no substantial dispute.    At the point where the accident happened, Polk street is crossed by a system of railroad tracks, nine in number, nearly parallel to each other.    On each side of the tracks are gates which are lowered across the streets when trains are passing, and in the night time red lights are hung on the gates.    These gates extend entirely across the roadway, the ends projecting about a foot over the sidewalk.    They are notice to foot passengers and the drivers of teams alike of the approach and passing of cars.    On the evening of the accident Harbaum, with two companions, approached the crossing from the west, and as they reached the tracks, a Rock Island passenger train was going out on the westerly tracks while a Lake Shore and Michigan Southern train was switching on the easterly tracks, the gates being at the time lowered across the streets.    After the Rock Island train had passed, Harbaum and his friends, without waiting for the gates to be raised, started to cross the tracks. As they were passing the flagman, he told them to look out, that trains were passing.    There were also upon the crossing two switchmen with lighted lanterns, and a watchman warning people to keep back.    As they neared the track next west of

the east track, the switching train, hidden from view by cars standing on an intervening track, was backing in ; upon discovering which Harbaum attempted to run around in front of it and thus cross over, in doing which he was struck by the train and killed.

It seems to us that the simple statement of the facts is enough to show that the deceased lost his life through his own rashness and folly. It appeared that he and his two associates were entirely familiar with the crossing, having, as the latter expressed it, crossed there "thousands of times." He knew that when the gates were lowered with red lights attached to them in the night time it was a signal of danger, and that cars were passing or about to pass, and he was bound to know that to attempt to cross at such a time was exceedingly hazardous, and full of peril. In addition to the warning from the lowered gates, he was expressly admonished by the flagman not to attempt to cross as cars were then passing. But he seems to have preferred to take the chances of getting safely across rather than insure safety by a few moments' delay. Under such circumstances can it be doubted that gross negligence and want of care was imputable to him? We think not.

Nor is it perceived in what respect the railroad company is chargeable with negligence. It was conceded on the trial that the gates were constructed in all respects as required by the city ordinance. It is not claimed that they were not lowered at the time of the accident, nor that the deceased was not aware of it. But it is contended that appellant was at fault in not having a light on the switching train to give warning of its approach. It is a sufficient answer to say that the company furnished a full equivalent for such light by lowering the gates with red lights attached and expressly notifying the deceased that cars were then passing. The only object of having a light displayed is to give notice that a train is approaching. If a person has actual and timely notice in some other way of the approach of a train, and with such notice voluntarily rushes into danger whereby he is injured, he can not hold another responsible merely because he was not notified in a particular way. Moreover, it appears that the deceased saw the train

before it struck him, for he attempted to run around it instead of waiting for it to pass by. Having thus voluntarily assumed the hazard he must accept the consequences.

There was some conflict in the evidence as to whether the bell was ringing at the time of the accident; but conceding that it was not, the ringing of a bell, like the display of a light, is only to give warning, and as has already been seen, deceased had full warning in other ways.

No questions of law arise in the case upon which it is necessary to pass. The case is one purely of fact; and while courts are reluctant to disturb the findings of juries upon mere questions of fact, cases sometimes arise where the verdict is so manifestly contrary to the evidence as to show that it must have been the result of passion, prejudice, or undue sympathy. In such cases it is the duty of courts to interpose and apply the corrective hand. That the present is such a case we see no room for doubt.

The judgment will therefore be reversed and the cause remanded for a new trial.

Reversed and remanded.